IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

Toby K. Payne #1720023,
Plaintiff,

V.                                  Action No. 2:17-cv-00211

James Sutterfield, et al.,
Defendants.

## Plaintiff's Declaration and Motion for T.R.O. and/or P.I.

Plaintiff, Toby K. Payne #1720023, makes the following declaration and motions this Court for a Temporary Restraining Order and/or Preliminary Injunction.

On 12/3/2019, I was transferred back to the Chronic Mentally Ill-Sheltered Housing (C.M.I.) program at the Clements Unit in Amarillo, Texas. During my most recent trip to the Montford Unit's psych ward, it was suggested by mental health staff that I should return to the CMI program, and I reluctantly agreed. Not long after that, I was informed that I had been accepted. However, I was still discharged from Montford Psych. and transferred back to the Robertson Unit. At the time, I was already eligible for review to be promoted in custody level from G5 to G4 and it was voted for approval by the Robertson Unit's Unit Classification Committee (U.C.C.).

As a G4 in regular housing, I was able to enjoy TV and dayroom activities from 7 a.m. to 11 a.m., the ability to walk to and eat in the chowhall for all three meals. Attend church services on Sunday mornings. Take a shower between 7 a.m. to 11 a.m. while in the dayroom. Walk to the medication window on my building. And enjoy basic physical social interaction with my fellow inmates.

Upon arrival at the Clements Unit, I was issued one jacket (I use it for a pillow), one sack lunch that did not conform with medical orders to only serve me Diet for Health (D.F.H.) meals, a small amount of toilet paper off the roll, four small pieces of green state issued soap, one wool blanket, and two sheets. I am assigned to a solitary single occupancy cell in 12 building, A pod, 4 section, 46 cell. Upon entering the cell, I noticed there was no mattress. I informed my pod officer and was told that there were none available on the building. I turned in a Step One grievance on this issue on 12/4/2019 and to date have received no response. I wrote the warden's office both on 12/5/2019 and 12/6/2019 and received no response. I have counted

(Pg. 1 of 5)

a least five inmates on my section alone who still do not have a mattress including me. Officer after officer walk by our cells looking in and seeing that we are sleeping directly on the steel bunk, and do nothing. I have yet to notice a supervisor walk by. To date, I have still not been issued a mattress. The heater does not work well and it is cold in here. The two sheets and blanket help by covering up. However, the steel bunk is very unforgiving and cold. I can barely sleep.

From 12/4/2019 until 12/6/2019, I was not afforded the opportunity to shower or use my one hour of recreation because officers claimed that there was a staff shortage. However, on those days, I noticed two officers on the floor and one in the picket. This is the minimum to run showers and rec. On 12/7/2019, we were afforded these opportunities. However as mentioned in this action, recreation and showers are only offered beginning at 5:30 a.m. when most of us are asleep and most likely to turn it down. Instead of officers stopping at each cell to ask each inmate if they want their rec. and shower and making a list, the inmate must be standing at their door when the officer performs their first walk for the shift beginning sometime around 5:30 a.m. Not all offenders have clocks. I do. So if the offender is not up and at his door, then they do not get their rec. and shower. Remember, all of these offenders are mentally ill and are taking psych. meds. On days that we are afforded the opportunity to exercise these privileges/rights, I chose not to accept them. I can recreate more in my cell at the times that I choose to than I can either in the small dayroom or small rec. yard by myself. I bathe when I choose to by sitting backwards on my toilet and pouring sink water over myself using my coffee cup. The very important thing to know here is, that no matter what the offender's actual custody level is, all of us in the C.M.I. program are treated as high security, high risk administrative segregation offenders. This building was designed to be self contained to house psychiatric offenders. It has classrooms that are never used and a small chowhall that has been converted into an employee breakroom. This building even has it's own commissary window to allow offenders to walk to the commissary window. But this is not done. Any service that can be provided to us in the C.M.I. program that can be done while the inmate is kept in his cell is done this way.

(Pg. 2 of 5)

To date, I have yet to receive any psych. counseling or even be seen by my mental health carrier (psychologist). I was seen briefly by my psychiatrist, Dr. Nguyen, cellside on 12/6/2019. It was not a private meeting because an officer was escorting her. The only difference I've noticed in the C.M.I. program from the last time I was here is there is a camera system installed now. The C.M.I. program to me is just a cute name that covers for the actual warehousing of the worst of the worst, mentally ill, inmates. The only benefit to where I am at presently at is that I have a cell to myself. That's it. I am split. I want to be here for that reason and that reason alone. I have tried everything within my power to get the mental health help I need and cannot even find it in a program called Chronic Mentally Ill or even at Montford Psych. All of the issues I complained about in this action are still occurring. Things have come full circle.

I know how to do this kind of time. However, solitary confinement has a sneaky way of adversly affecting a person in a way that they cannot sense. I may or may not succumb to yet another mental breakdown or psychotic episode as mentioned in a related case filed for retaliation, Payne v. Collier, et al, #1:18-cv-00208 pending in the Abilene Division. How many more before I succumb to suicide? I mentioned in the Collier case, in the initial complaint, that I fight off suicidal thoughts every day. I still do. I do not tell anyone here because to do so would be punishment in of itself as complained about in a case dismissed by the Abilene Court Payne v. Almanza, et al., #1:18-cv-00125, where I detail what happened to me after I admitted I was suicidal.

I motion this Court to order the defendants in their official capacity (the defendants in this action have all moved on from what I can tell) to show cause for the following:
(1) Why I should NOT be issued a mattress in a timely manner.
(2) Why I should be confined to my single occupancy cell virtually 24 hours a day and how this benefits me, being diagnosed with schizoaffective disorder. A combination of bi-polar disorder and psychosis.

On the evening of 12/7/2019, I was asked by the mental health nursing staff to sign papers agreeing to the terms and policies of

(Pg. 3 of 5)

the CMI program. I informed them that I will not sign anything if they cannot get me a mattress. I was told I could be kicked out of the program if I refuse to sign the papers.

I have spoken with a few of the inmates back here, and they have all basicly told me that what very little canselling they do get is often cancelled because officer/staff claims they are short of staff. This excuse also interupts showers and rec. So between mental health staff employeed by Texas Tech and TDCJ, they have managed to convince 100+ inmates, mentally ill inmates, the worst of the worst mental health wise, to agree to be warehoused and be each confined to their cells virtually 24 hrs a day for months and in some cases, years at a time.

I respectfully invite this Court (Your Honor) to please read all the details in Payne v. Collier, et al., #1:18-cv-00208, pending in the Abilene Division. I filed a notice of related case in this action pointing to the Collier case for this very reason. The Collier case was filed by me citing retaliatory efforts by TDCJ officials for filing all six of my previous lawsuits. In addition to Gov. Greg Abbott and Tex. Atty. Gen. Ken Paxton, the Collier case names all 26 defendants in all previous six lawsuits I filed in federal court (Amarillo Division & Abilene Division). I have asked the Abilene court to consider consolidate this action into the Collier case. I respectfully ask Your Honor in this action to come and tour the CMI housing area. Lastly, one of the offenders I am in shouting distance from, and communicating with, is David Kelly. He is one of the inmates who wrote a letter on my behalf witnessing what the conditions are like in the CMI program. Yes, he has been here the entire time. He claims it is worse in the CMI program than when I was here before.

### Prayer

It is my sincere prayer that this Court strongly consider all the TDCJ has put me through, as documented in Payne v. Collier, et al, #1:18-cv-00208, pending in the Abilene Division. I thank God that I have a clock/radio, a good study bible, a Strong's expanded exaustive concordance, a four volume set of the Interlinear bible to keep me somewhat grounded.

I have filed a similiar motion to this motion in Payne v. Collier et al. I humbly request this Court grant a hearing in this matter.

(Pg. 4 of 5)

"I will make your oppressors eat their own flesh, and they shall be drunk with their own blood, as with wine. then all flesh shall know that, I am the Lord your Savior, and your redeemer, the mighty one of Jacob." Isaiah 49:26

<u>Inmate Declaration</u>

I, declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON 12/8/2019            /s/

Toby K. Payne #1720023

Respectfully submitted,

/s/

Toby K. Payne #1720023
Clements Unit
Plaintiff, Pro se

(Pg. 5 of 5)

12/8/2019    Re: Payne v. Satterfield, et al., #2:17-cv-00211

Dear Clerk of the Court:

Please file the enclosed document in the above styled action.

RECEIVED
DEC 12 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Respectfully,

Toby K. Payne #1720023
Clements Unit
Plaintiff, Pro se.



Toby K. Payne #1780083
Clements Unit
9601 Spur 591
Amarillo, TX 79107

*Legal Mail*

AMARILLO TX 791
10 DEC 2019 PM 1 T

Clerk
U.S. District Court
N.D. of Texas
205 S.E. 5th Ave., Room 133
Amarillo, TX 79101

RECEIVED
DEC 1 2 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS